IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JULIE ADAMS AND JAMES ADAMS,

Plaintiffs,

v.                                                        Civil Action No.  2:12-cv-00932

BOSTON SCIENTIFIC CORP.,

Defendant.

MEMORANDUM OPINION AND ORDER
(*Defendant's Motion for Partial Summary Judgment*)

Pending before the court is Defendant Boston Scientific Corporation's Motion for Partial

Summary Judgment on Plaintiffs Julie and James Adams's Punitive Damages Claim ("Motion")

[Docket 60]. For the reasons set forth below, the Motion is **DENIED**.

I.      **Background**

This case resides in one of seven MDLs assigned to me by the Judicial Panel on

Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ

prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are nearly

70,000 cases currently pending, approximately 19,000 of which are in the Boston Scientific Corp.

("BSC") MDL, MDL 2326. In an effort to efficiently and effectively manage this massive MDL,

I decided to conduct pretrial discovery and motions practice on an individualized basis so that once

a case is trial-ready (that is, after the court has ruled on all summary judgment motions, among

other things), it can then be promptly transferred or remanded to the appropriate district for trial.

To this end, I ordered the plaintiffs and defendant to each select 50 cases, which would then

become part of a "wave" of cases to be prepared for trial and, if necessary, remanded. (*See* Pretrial Order # 65, *In re: Boston Scientific Corp. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:12-md-002326, entered Dec. 19, 2013, *available at* http://www.wvsd.uscourts.gov/MDL/boston/orders.html). This selection process was completed twice, creating two waves of 100 cases, Wave 1 and Wave 2. The Adams's case was selected as a Wave 1 case by the plaintiffs.

Plaintiff Julie Adams was surgically implanted with the Pinnacle Pelvic Floor Repair Kit (the "Pinnacle") on June 30, 2011. (*See* BSC's Mot. for Summ. J. & Mem. of Law in Supp. [Docket 58], at 5). Drs. Renee Smith and Douglas Kyle, Jr. performed the surgery at a hospital in Decatur, Texas. (Am. Short Form Compl. [Docket 58-1], at 4). Ms. Adams claims that she has experienced multiple complications as a result of implantation of the Pinnacle. She brings the following claims against BSC: strict liability for manufacturing defect, failure to warn, and design defect; negligence; breach of express and implied warranties; and punitive damages. (*Id.* at 4–5). Mr. Adams brings a claim for loss of consortium. (*Id.* at 4). In the instant motion, BSC moves for summary judgment on the grounds that the plaintiffs' claim for punitive damages is without evidentiary or legal support.

## II.    Legal Standards

### A.  Summary Judgment

A partial summary judgment "is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case." Fed. R. Civ. P. 56 advisory committee's note. A motion for partial summary judgment is governed by the same standard applied to consideration of a full motion for summary judgment. *See Pettengill v. United States*, 867 F. Supp. 380, 381 (E.D. Va. 1994) (citing *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592. 595 (4th Cir. 1985)).

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict" in his or her favor. *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997).

**B. Choice of Law**

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL cases. The choice of law for these pretrial motions depends on whether they concern federal or state law:

> When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation.

*In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (internal citations omitted). To determine the applicable state law for a dispositive motion, I generally refer to the choice-of-law rules of the jurisdiction where the plaintiff first filed her claim. *See In re Air Disaster at Ramstein Air Base, Ger.*, 81 F.3d 570, 576 (5th Cir. 1996) ("Where a transferee court presides over several diversity actions consolidated under the multidistrict rules, the choice of law rules of each jurisdiction in which the transferred actions were originally filed must be applied."); *In re Air Crash Disaster Near Chi., Ill.*, 644 F.2d 594, 610 (7th Cir. 1981); *In re Digitek Prods. Liab. Litig.*, MDL No. 2:08-md-01968, 2010 WL 2102330, at *7 (S.D. W. Va. May 25, 2010).

If a plaintiff files her claim directly into the MDL in the Southern District of West Virginia, however, as the Adamses did in this case, I consult the choice-of-law rules of the state in which the plaintiff was implanted with the product. *See Sanchez v. Boston Scientific Corp.*, 2:12-cv-05762, 2014 WL 202787, at *4 (S.D. W. Va. Jan. 17, 2014) ("For cases that originate elsewhere and are directly filed into the MDL, I will follow the better-reasoned authority that applies the choice-of-law rules of the originating jurisdiction, which in our case is the state in which the plaintiff was implanted with the product."). Ms. Adams received the Pinnacle implantation surgery in Texas. Thus, the choice-of-law principles of Texas guide this court's choice-of-law analysis.

## III. Analysis

### A. Texas Follows the Most Significant-Relationship Test for Torts

The question before the court is whether the plaintiffs have produced enough evidence to create a genuine dispute of material fact as to whether BSC engaged in culpable conduct sufficient to meet the punitive damages standard. To resolve the issue, I must first determine which state's law applies. As discussed above, Texas choice-of-law principles apply generally to this case. In

tort actions, Texas adheres to the Restatement (Second) of Conflict of Laws. *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979). Under section 145 of the Second Restatement, the court must apply the law of the state with the most "significant relationship to the occurrence and the parties."

BSC argues that the law of Massachusetts—the place where the alleged misconduct occurred—should apply instead of the law of Texas—where the alleged injury occurred. (*See* BSC's Mot. for Partial Summ. J. & Mem. of Law in Supp. ("Mem. in Supp.") [Docket 60], at 12–15). BSC maintains that the focus of the punitive damages inquiry in this case is corporate conduct and that such alleged conduct took place, if at all, in Massachusetts, where BSC's principal place of business is located and corporate decisions are centered. (*Id.*). BSC also designed and labeled the Pinnacle in Massachusetts. (*Id.* at 13). Accordingly, BSC takes the position that Massachusetts law applies to the plaintiffs' punitive damages claim. (*Id.* at 15).

BSC points to this court's ruling in *In re Ethicon*, where I held that the focus of the punitive damages inquiry was Ethicon's corporate conduct, and because that conduct allegedly occurred in New Jersey, New Jersey law applied. *In re Ethicon, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:12-cv-4301, 2014 WL 186869, at *10 (S.D. W. Va. Jan. 15, 2014), *rev'd on other grounds*, No. 2:12-cv-4301, 2014 WL 457551 (S.D. W. Va. Feb. 3, 2014). The plaintiffs in *In re Ethicon* did "not assert that the law of any other state applie[d] to their punitive damages claim." (*Id.*). As a result of this oversight, I found that New Jersey law applied to the plaintiffs' punitive damages claim. In the present case, however, the parties actively dispute the governing law. Thus, I engage in a full analysis here.

In *Gutierrez v. Collins*, the Texas Supreme Court announced a new approach for choice-of-law questions concerning tort: "Having considered all of the theories, it is the holding of this court that in the future all conflicts cases sounding in tort will be governed by the 'most significant

5

relationship' test as enunciated in Sections 6 and 145 of the Restatement (Second) of Conflicts."

583 S.W.2d 312, 318 (Tex. 1979).

Section 6 sets out the general principles by which the more specific rules are applied. It states:

§ 6. Choice-of-Law Principles

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971).

Section 145 lists factual matters the court considers when applying the principles of section 6 to a tort case:

§ 145. The General Principle

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered. These contacts are to be evaluated according to their relative importance with respect to the particular issue.

6

Restatement (Second) of Conflict of Laws § 145 (1971).

Therefore, I must first determine which state, as between Massachusetts and Texas, has the most significant relationship to the issue of punitive damages.

**B.      Texas Has the Most Significant Relationship to the Issue of Punitive Damages**

        **a.   Section 6 Factors**

The applicable section 6 factors do not suggest that Massachusetts has a more significant relationship to the punitive damages claim than Texas. The relevant policies of the forum weigh in favor of applying Texas punitive damages law. "Texas has a strong commitment to protecting its residents from defective and dangerous products." *Huddy v. Fruehauf Corp.*, 953 F.2d 955, 958 (5th Cir. 1992). *See also Mitchell v. Lone Star Ammunition, Inc.*, 913 F.2d 242, 249–50 (5th Cir. 1990) ("The Texas legislature and courts have developed an almost paternalistic interest in the protection of consumers and the regulation of the conduct of manufacturers that have business operations in the state."). In Texas, exemplary damages are awarded "as a penalty or by way of punishment but not for compensatory purposes." Tex. Civ. Prac. & Rem. Code Ann. § 41.001(5) (West 2015). The purpose, in other words, is "punishment and deterrence." *Vargas v. Kiewit Louisiana Co.*, No. CIV.A. H-09-2521, 2012 WL 1029517, at *7 (S.D. Tex. Mar. 26, 2012).

Comparatively, Massachusetts's relevant policies and interests regarding punitive damages do not weigh in favor of applying Massachusetts law. This court's reasoning in *Sanchez v. Boston Scientific Corp.* is instructive:

> Massachusetts has no legitimate interest in applying its prohibition on punitive damages to injuries occurring outside of Massachusetts. BSC contends that Massachusetts has an interest in protecting its citizens from excessive financial liability. BSC is a Delaware Corporation with its principle place of business in Massachusetts.... BSC points to no Massachusetts legal authority supporting its proposition that Massachusetts has an interest in protecting its citizens from excessive liability, let alone liability for wrongs occurring outside of

7

Massachusetts. Likewise, I am unable to locate any Massachusetts cases articulating the state's interest in prohibiting punitive damages at common law.... Even assuming Massachusetts's punitive damages prohibition is based on a policy of shielding its residents from excessive liability, Massachusetts has no legitimate interest in enforcing this policy outside of its borders.

No. 2:12–cv–05762, 2014 WL 4059214, at *10 (S.D.W.Va. Aug. 18, 2014) (citations omitted). Massachusetts has no interest, and certainly not a stronger interest than Texas, in applying its punitive damages law here. Instead, it is Texas that has the most significant relationship to plaintiffs' punitive damages claim.

### b.   Section 145 Factors

The section 145 factors likewise favor applying Texas law. BSC is incorporated under the laws of Delaware and its "principal place of business" is in Massachusetts. (Mem. in Supp. [Docket 60], at 11). BSC maintains, therefore, that the conduct allegedly giving rise to the punitive damages claims occurred in Massachusetts. (*Id.* at 14–15). However, Ms. Adams was implanted with the Pinnacle device in Texas and both plaintiffs are Texas residents. As it concerns the issue of punitive damages, the relationship between the parties is not centered in Massachusetts. Instead, it is centered in Texas, where BSC distributes products, the plaintiffs reside, and most importantly, where Ms. Adams was implanted with the Pinnacle and allegedly injured.

### c.   Choice-of-Law Conclusion

Under Texas's choice-of-law principles for tort, the law of the place with the most significant relationship with respect to the claims governs. The plaintiffs here are Texas residents, and Ms. Adams was implanted with the Pinnacle device and allegedly suffered injury in Texas. The location of alleged injury is not fortuitous. BSC has its headquarters in Massachusetts and conducts operations related to pelvic mesh products in that state, but BSC also directs its products to the Texas market. Plainly, the state of Texas has a weighty interest in punishing tortfeasors who

direct products to the Texas market that injure Texans. Massachusetts, meanwhile, has no legitimate interest, and certainly not a relatively stronger interest, in prohibiting punitive damages outside its borders. For these reasons, I **FIND** that Texas has the more significant relationship to the issue of punitive damages in this case, and therefore Texas law applies to the plaintiffs' punitive damages claim.

### C.     BSC's Motion for Partial Summary Judgment on Plaintiffs' Punitive Damages Claim

I now consider the substantive law. In Texas, "exemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from: (1) fraud; (2) malice; or (3) gross negligence." Tex. Civ. Prac. & Rem. Code Ann. § 41.003. Under Chapter 41, the term "fraud" refers to "fraud other than constructive fraud," *Id.* at § 41.001(6), or "dishonesty of purpose or intent to deceive," *Flanary v. Mills*, 150 S.W.3d 785, 795 (Tex. App. 2004) (comparing actual fraud to constructive fraud). Malice encompasses "a specific intent by the defendant to cause substantial injury or harm to the claimant." *Id.* at § 41.001(7). Finally, gross negligence means "an act or omission: (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others." *Id.* at § 41.001(11).

BSC contends that the plaintiffs have not produced evidence of any BSC conduct that was so egregious as to warrant punitive damages. (Mem. in Supp. [Docket 60], at 17). As evidence that BSC has not acted with fraud, malice, or gross negligence, BSC notes that the Pinnacle was submitted to the Food and Drug Administration ("FDA") prior to marketing, and that the FDA

cleared the product with full knowledge of its potential risks and benefits. (*Id.*). I decline to consider the FDA preclearance process in my judgment.[1]

The plaintiffs, on the other hand, rely on my decisions in *Hendricks v. Boston Scientific Corp.*, 51 F. Supp. 3d 638 (S.D. W. Va. 2014), and *Sanchez v. Boston Scientific Corp.*, 38 F. Supp. 3d 727 (S.D. W. Va. 2014). They argue that a reasonable jury could find that BSC's actions evince fraud, malice, or gross negligence because BSC ignored a warning on the Material Safety Data Sheet ("MSDS") and failed to conduct clinical testing before selling its device. (Resp. [Docket 73], at 13–14). Although *Hendricks* and *Sanchez* did not concern Texas law, my reasoning in those cases applies with equal force here.

As in *Sanchez*, the MSDS warned BSC not to implant the material into the human body. (MSDS [Docket 73-4], at 1). Specifically, the warning provided:

> MEDICAL APPLICATION CAUTION: Do not use this Chevron Phillips Chemical Company LP material in medical applications involving permanent implantation in the human body or permanent contact with internal body fluids or tissues.

(*Id.*). Despite this warning, BSC used the polypropylene manufactured and supplied by Chevron Phillips in the Pinnacle device.

Additionally, the plaintiffs reference the written agreement between BSC and Chevron Phillips ("the Agreement"), which cautioned BSC to make its own determination of the safety and

---

[1] As I explained in *Lewis v. Johnson & Johnson*,

> Evidence regarding the 510(k) process poses a substantial risk of misleading the jury and confusing the issues. That a device has been given clearance through the FDA's 510(k) process is not relevant to state tort law. Admission of any evidence regarding the 510(k) process runs the risk of misleading the jury to believe that FDA 510(k) clearance might be dispositive of the plaintiffs' state law claims. The prejudicial value of evidence regarding the 510(k) process far outweighs its probative value.

991 F. Supp. 2d 748, 754 (S.D. W. Va. 2014).

suitability of the polypropylene material in its products. (Resp. [Docket 73], at 14). The Agreement provided:

> BEFORE USING ANY PSPC POLYPROPYLENE PRODUCT, BOSTON SCIENTIFIC IS ADVISED AND CAUTIONED TO MAKE ITS OWN DETERMINATION AND ASSESSMENT OF THE PSPC POLYPROPYLENE PRODUCT FOR USE BY, FOR OR ON BEHALF OF BOSTON SCIENTIFIC. IT IS THE ULTIMATE RESPONSIBILITY OF BOSTON SCIENTIFIC TO ENSURE THAT THE PSPC POLYPROPYLENE PRODUCT IS SUITED TO BOSTON SCIENTIFIC'S SPECIFIC APPLICATION.

(Agreement [Docket 73-6], at 1–2).

Despite the MSDS warning and the admonition from Chevron Phillips to conduct its own tests, an internal BSC document indicated that BSC conducted no clinical studies on the Pinnacle before releasing it to the public. (*See* Pinnacle Clinical Risk/Benefit Analysis [Docket 73-1], at 10).

In light of this evidence, I **FIND** that under a clear and convincing standard, a reasonable juror could find that by ignoring a warning on the MSDS and neglecting to conduct clinical studies, BSC is guilty of fraud, malice, or gross negligence. *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.003. Accordingly, BSC's motion for summary judgment on the issue of punitive damages is **DENIED**.

## IV.    Conclusion

For the reasons discussed above, it is **ORDERED** that BSC's Motion [Docket 60] is **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:  October 7, 2015

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE