IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JULIE ADAMS AND JAMES ADAMS,

                  **Plaintiffs,**

v.                                                 **Civil Action No.  2:12-cv-00932**

BOSTON SCIENTIFIC CORP.,

                  **Defendant.**

MEMORANDUM OPINION AND ORDER
*(Defendant's Motion for Summary Judgment)*

Pending before the court is Defendant Boston Scientific Corporation's Motion for Summary Judgment and Memorandum in Support Against Plaintiffs Julie Adams and James Adams ("Motion") [Docket 58]. As set forth below, the defendant's Motion is **GRANTED IN PART** with respect to the plaintiffs' claims of strict liability for manufacturing defect, negligent manufacturing, breach of express warranty, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose. The defendant's Motion is **DENIED IN PART** with respect to the plaintiffs' claims of strict liability for design defect, negligent design, and loss of consortium.

I.      **Background**

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 75,000 cases currently pending, approximately 19,000 of which are in the Boston Scientific Corp.

("BSC") MDL, MDL 2326. In an effort to efficiently and effectively manage this massive MDL, I decided to conduct pretrial discovery and motions practice on an individualized basis so that once a case is trial-ready (that is, after the court has ruled on all summary judgment motions, among other things), it can then be promptly transferred or remanded to the appropriate district for trial. To this end, I ordered the plaintiffs and defendant to each select 50 cases, which would then become part of a "wave" of cases to be prepared for trial and, if necessary, remanded. (*See* Pretrial Order # 65, *In re Boston Scientific Corp. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:12-md-002326, entered Dec. 19, 2013, *available at* http://www.wvsd.uscourts.gov/MDL/boston/ orders.html). This selection process was completed twice, creating two waves of 100 cases, Wave 1 and Wave 2. The Adamses' case was selected as a Wave 1 case by the plaintiffs.

On June 30, 2011, Ms. Adams was surgically implanted with the Pinnacle Pelvic Floor Repair Kit (the "Pinnacle"), a product manufactured by BSC to treat POP. (*See* Mot. [Docket 58], at 5). Drs. Renee Smith and Douglas Kyle Jr. implanted the product at Wise Regional Hospital in Decatur, Texas. (Am. Short Form Compl. [Docket 58-1], at 4). Ms. Adams claims that as a result of implantation of the Pinnacle, she has experienced multiple complications. She brings the following claims against BSC: strict liability for manufacturing defect, failure to warn, and design defect; negligence; breach of express and implied warranties; and punitive damages. (*Id.* at 4–5). Mr. Adams brings a claim for loss of consortium. (*Id.*).

## II. Legal Standards

### A. Summary Judgment

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the

evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict" in his or her favor. *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997).

**B.  Choice of Law**

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL cases. The choice of law for these pretrial motions depends on whether they concern federal or state law:

> When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation.

*In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (internal citations omitted). To determine the applicable state law for a dispositive motion, I generally refer to the choice-of-law rules of the jurisdiction where the plaintiff first filed her

claim. *See In re Air Disaster at Ramstein Air Base, Ger.*, 81 F.3d 570, 576 (5th Cir. 1996) ("Where

a transferee court presides over several diversity actions consolidated under the multidistrict rules,

the choice of law rules of each jurisdiction in which the transferred actions were originally filed

must be applied."); *In re Air Crash Disaster Near Chi., Ill.*, 644 F.2d 594, 610 (7th Cir. 1981); *In*

*re Digitek Prods. Liab. Litig.*, MDL No. 2:08-md-01968, 2010 WL 2102330, at *7 (S.D. W. Va.

May 25, 2010).

If a plaintiff files her claim directly into the MDL in the Southern District of West Virginia,

however, as Ms. Adams did in this case, I consult the choice-of-law rules of the state in which the

plaintiff was implanted with the product. *See Sanchez v. Boston Scientific Corp.*, 2:12-cv-05762,

2014 WL 202787, at *4 (S.D. W. Va. Jan. 17, 2014) ("For cases that originate elsewhere and are

directly filed into the MDL, I will follow the better-reasoned authority that applies the choice-of-

law rules of the originating jurisdiction, which in our case is the state in which the plaintiff was

implanted with the product."). Ms. Adams received the Pinnacle implantation surgery in Texas.

Thus, the choice-of-law principles of Texas guide this court's choice-of-law analysis.

The parties agree, as does this court, that these principles compel application of Texas law

to the plaintiffs' claims. In tort actions, Texas adheres to the Restatement (Second) of Conflict of

Laws (Am. Law Inst. 1971). *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979). Under section

145 of the Restatement (Second) of Conflict of Laws, the court must apply the law of the state

with the most "significant relationship to the occurrence and the parties." Here, the Adamses reside

in Texas, and the product was implanted in Texas. Thus, I apply Texas's substantive law to this

case.

## III.     Analysis

BSC argues that it is entitled to summary judgment because the Adamses' legal theories are without evidentiary or legal support. (Mot. [Docket 58], at 1).[1] Ms. Adams concedes her claims for strict liability for manufacturing defect and negligent manufacturing. (*See* Pls.' Resp. in Opp'n to Def.'s Mot. for Summ. J. ("Resp.") [Docket 74], at 19). Accordingly, BSC's Motion on these claims is **GRANTED**. BSC has not moved for summary judgment with regard to Ms. Adams's failure to warn claims, they thus survive summary judgment. Below, I apply the summary judgment standard to each remaining claim.

### A.     Strict Liability

Texas has adopted the doctrine of strict liability for defective products set forth in section 402A of the Restatement (Second) of Torts. *See McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787, 789 (Tex. 1967). Section 402A provides:

(1)   One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

    (a)   the seller is engaged in the business of selling such a product, and

    (b)   it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2)   The rule stated in Subsection (1) applies although

    (a)   the seller has exercised all possible care in the preparation and sale of his product, and

    (b)   the user or consumer has not bought the product from or entered into any contractual relation with the seller.

---

[1] In its Motion, BSC asserts that "Plaintiffs' non-warranty claims are barred by the statute of limitations." (Mot. [Docket 58], at 1). In its reply, however, BSC acknowledges that it "mistakenly included the statute of limitations as grounds for summary judgment in the introduction." (*See* BSC's Reply in Supp. of its Mot. for Summ. J. [Docket 90], at 2). Accordingly, I need not address the statute of limitations here.

Restatement (Second) of Torts § 402A (Am. Law Inst. 1965). "The concept of defect is central to a products liability action brought on a strict tort liability theory, whether the defect be in conscious design, or in the manufacture of the product, or in the marketing of the product." *Turner v. Gen. Motors Corp.*, 584 S.W.2d 844, 847 (Tex. 1979).

### 1.     Statutory Defense

BSC argues that chapter 82 of the Texas Civil Practice and Remedies Code provides two separate statutory presumptions of non-liability that apply to FDA-regulated prescription medical devices, both of which bar Ms. Adams's claims. (Mot. [Docket 58], at 9–12). Section 82.008(a) of the Texas Civil Practice and Remedies Code states that:

> In a products liability action brought against a product manufacturer or seller, there is a rebuttable presumption that the product manufacturer or seller is not liable for any injury to a claimant caused by some aspect of the formulation, labeling, or design of a product if the product manufacturer or seller establishes that the product's formula, labeling, or design *complied with mandatory safety standards or regulations* adopted and promulgated by the federal government, or an agency of the federal government, that were applicable to the product at the time of manufacture and that governed the product risk that allegedly caused harm.

Tex. Civ. Prac. & Rem. Code § 82.008(a) (emphasis added).

As I have previously held, the 510(k) process is not a safety statute or administrative regulation. *See generally Lewis, et al. v. Johnson & Johnson, et al.*, 991 F. Supp. 2d 748 (S.D. W. Va. 2014). The Supreme Court determined that "the 510(k) process is focused on equivalence, not safety." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 493, 116 S. Ct. 2240 (1996) (internal quotation omitted); *see also Riegel v. Medtronic, Inc.*, 552 U.S. 312, 323, 128 S. Ct. 999 (2008) ("While § 510(k) is focused on equivalence, not safety, premarket approval is focused on safety, not equivalence.") (internal quotation omitted).[2] FDA regulations also state that 510(k) clearance

---

[2] Other courts interpreted *Lohr* as I do, holding that the 510(k) process does not go to whether a product is safe and effective or impose any requirements on its own. *See, e.g., Martin v. Am. Med. Sys., Inc.,* 116 F.3d 102, 104 (4th Cir. 1997); *Bass v. Stryker Corp.,* 669 F.3d 501, 507 (5th Cir. 2012); *Brooks v. Howmedica, Inc.,* 273 F.3d 785, 794 (8th

"does not in any way denote official approval of the device." 21 C.F.R. § 807.97. The FDA thus prohibits manufacturers of devices cleared through the 510(k) process from making any representations that their devices have been approved by the FDA. *See id.* ("Any representation that creates an impression of official approval of a device because of complying with the premarket notification regulations is misleading and constitutes misbranding."). Because the FDA's 510(k) clearance process is not a mandatory safety standard or regulation, I **FIND** section 82.008(a) inapplicable here.

Section 82.008(c) of the Texas Civil Practice and Remedies Code provides as follows:

In a products liability action brought against a product manufacturer or seller, there is a rebuttable presumption that the product manufacturer or seller is not liable for any injury to a claimant allegedly caused by some aspect of the formulation, labeling, or design of a product if the product manufacturer or seller establishes that the product was subject to pre-market licensing or approval by the federal government, or an agency of the federal government, that the manufacturer complied with all of the government's or agency's procedures and requirements with respect to pre-market licensing or approval, and that *after full consideration of the product's risks and benefits the product was approved or licensed* for sale by the government or agency.

Tex. Civ. Prac. & Rem. Code § 82.008(c) (emphasis added). The FDA conducts a full analysis of the product's risks and benefits when a product goes through the premarket approval process, not the 510(k) clearance process. As discussed above, the 510(k) process relates to a medical device's equivalence to a preexisting device; it does not require "full consideration of the product's risks and benefits." Also, as stated above, 510(k) clearance does not constitute FDA "approval" of the device. Therefore, I **FIND** that section 82.008(c) does not apply to BSC in this case.

---

Cir. 2001); *Mack v. Stryker Corp.,* 893 F. Supp. 2d 976, 985 (D. Minn. 2012); *Soufflas v. Zimmer, Inc.,* 474 F. Supp. 2d 737, 747 n.6 (E.D. Pa. 2007); *Nicoll v. I-Flow, LLC,* No. 12-1593, 2013 WL 2477032, at *3 (E.D. La. June 7, 2013).

## 2.    Design Defect

In Texas, a plaintiff bringing a design defect claim under strict liability must prove by a preponderance of the evidence that (1) the product was unreasonably dangerous due to a defect, (2) "there was a safer alternative design," and (3) "the defect was a producing cause" of the damages. Tex. Civ. Prac. & Rem. Code Ann. § 82.005; *see also Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009). To determine whether a product is unreasonably dangerous, Texas courts apply a risk-utility test that considers the following factors:

> (1) the utility of the product to the user and to the public as a whole weighed against the gravity and likelihood of injury from its use; (2) the availability of a substitute product which would meet the same need and not be unsafe or unreasonably expensive; (3) the manufacturer's ability to eliminate the unsafe character of the product without seriously impairing its usefulness or significantly increasing its costs; (4) the user's anticipated awareness of the dangers inherent in the product and their avoidability because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions; and (5) the expectations of the ordinary consumer.

*Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 432 (Tex. 1997); *see also Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 256 (Tex. 1999). Whether the product is unreasonably dangerous is generally an issue for the jury. *Timpte Indus.*, 286 S.W.3d at 312; *Am. Tobacco*, 951 S.W.2d at 432.

BSC argues that comment k to section 402A bars the plaintiff's design defect claim. Comment k exempts certain products from strict liability because they are "unavoidably unsafe."[3]

---

[3] Comment k provides as follows:

> *Unavoidably unsafe products.* There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs. An outstanding example is the vaccine for the Pasteur treatment of rabies, which not uncommonly leads to very serious and damaging consequences when it is injected. Since the disease itself invariably leads to a dreadful death, both the marketing and the use of the vaccine are fully justified, notwithstanding the unavoidable high degree of risk which they involve. Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it *unreasonably* dangerous. The same is true of many other drugs, vaccines, and the like, many of which for this very reason cannot legally be sold except to physicians, or under the prescription of a physician. It is also true in particular of many new or experimental drugs as to which, because of lack of time and opportunity for sufficient medical experience, there can be no assurance of safety, or perhaps even of purity of ingredients, but such experience as there is justifies

8

The interpretation and treatment of this exemption varies. Some courts have found that comment k categorically bars design defect claims for certain medical products. *See, e.g.*, *Brown v. Superior Court*, 751 P.2d 470, 477 (Cal. 1988) (leading case adopting categorical approach). Thus, in these states, comment k is an absolute bar to design defect claims for particular classes of products. Other courts have adopted a case-by-case approach. *See, e.g.*, *Toner v. Lederle Labs., a Div. of Am. Cyanamid Co.*, 732 P.2d 297, 308 (Idaho 1987) (leading extant case adopting case-by-case approach). In these states, whether comment k bars a claim for design defect depends on the particular product at hand.

I reject BSC's contention that Texas's absolute bar for FDA-approved prescription drugs, *see Carter v. Tap Pharm., Inc.*, No. SA-03-CA-0182, 2004 WL 2550593, at *2 (W.D. Tex. Nov. 2, 2004) ("Under Texas law, all FDA-approved prescription drugs are unavoidably unsafe as a matter of law."), applies here, given that the Pinnacle is neither FDA-approved nor a prescription drug. *See Lofton v. McNeil Consumer & Speciality Pharm.*, 682 F. Supp. 2d 662, 679 (N.D. Tex. 2010) (refusing to "take a leap not taken by Texas courts" in applying comment k categorically outside the prescription drug context).

BSC presents no other argument on design defect. Thus, BSC has failed to meet its burden under the summary judgment standard of showing the absence of a genuine dispute as to any material fact. *See* Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970), *superseded on other grounds by Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Therefore, BSC's Motion on the plaintiff's claim of strict liability for design defect is **DENIED**.

---

the marketing and use of the drug notwithstanding a medically recognizable risk. The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk.

Restatement (Second) of Torts § 402A cmt. k (Am. Law Inst. 1965).

### B.      Negligence

The defendant has not presented arguments with respect to the negligent manufacturing claim beyond those I have already rejected. Accordingly, BSC's Motion as to the negligent manufacturing claim is **DENIED**.

### C.      Express and Implied Warranties

To recover for the breach of an express or implied warranty, Texas law requires that a plaintiff provide notice to the seller before filing suit. Section 2.607(c)(1) of the Texas Business & Commerce Code mandates that "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Tex. Bus. & Com. Code Ann. § 2.607; *see also Ackermann v. Wyeth Pharm.*, 471 F. Supp. 2d 739, 745 (E.D. Tex. 2006), *aff'd*, 526 F.3d 203 (5th Cir. 2008) ("[T]he Court agrees that to maintain the claim for breach of warranty, notice was required."); *Wilcox v. Hillcrest Mem'l Park*, 696 S.W.2d 423, 424–25 (Tex. App. 1985) ("[S]ection 2.607(c)(1) requires that a buyer notify any seller . . . of the product's alleged defect within a reasonable time of discovering the defect and that failure to do so bars the buyer from any remedy for breach of warranty under the Texas Business & Commerce Code."). The rule applies to manufacturers as well as sellers. *See U.S. Tire-Tech, Inc. v. Boeran, B.V.*, 110 S.W.3d 194, 199 (Tex. App. 2003) ("[U]nder section 2.607(c)(1), a buyer is required to give notice of an alleged breach of warranty to a remote manufacturer.").

Here, the plaintiffs have presented no evidence of pre-suit notice. Accordingly, BSC's Motion on the plaintiff's warranty claims is **GRANTED**.

### D.      Loss of Consortium

BSC moves for summary judgment on Mr. Adams's loss of consortium claim, arguing that it is a derivative claim and therefore cannot be maintained without Ms. Adams's strict liability and

negligence claims. Because Ms. Adams's design defect and failure to warn claims survive, BSC's motion for summary judgment with respect to loss of consortium is **DENIED**.

**IV.     Conclusion**

For the reasons discussed above, it is **ORDERED** that BSC's Motion [Docket 58] is **GRANTED IN PART** with respect to the plaintiffs' claims of strict liability for manufacturing defect, negligent manufacturing, breach of express warranty, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose, and **DENIED IN PART** with respect to the plaintiffs' claims of strict liability for design defect, negligent design, and loss of consortium.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        April 1, 2016

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE